IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT
ATLANTA DIVISION

| | | |
|---|---|---|
| CYNTHIA BRADLEY, | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| GLOBAL HOTEL GROUP, LLC | ) | |
| d/b/a MCDONOUGH HOTEL, LLC | ) | |
| AND PARKS HOTELS & RESORTS, | ) | |
| INC. d/b/a HOME2 SUITES | ) | |
| BY HILTON, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiff Cynthia Bradley ("Plaintiff or Bradley"), by and through undersigned counsel, and files this Complaint for Damages, and shows the Court as follows:

**Nature of Complaint**

1.

Plaintiff brings this action to obtain full and complete relief and to redress the unlawful employment practices described herein.

2.

This action seeks declaratory relief, liquidated and actual damages, along with attorney's fees and costs, for Defendants' failure to pay federally mandated overtime wages to Plaintiff in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 *et seq*. (hereinafter the "FLSA") during Plaintiff's employment with Defendants. Plaintiff also brings discrimination and retaliation claims for damages pursuant to 42 U.S.C. § 1981.

**Jurisdiction and Venue**

3.

The jurisdiction of this Court is invoked pursuant to 29 U.S.C. §216(b), and 28 U.S.C. §1331.

4.

Defendant Global Hotel Group, LLC d/b/a Mcdonough Hotel, LLC ("Defendant" or "Global") is a Georgia limited liability company and resides in this district. In addition, a substantial part of the acts and omissions that give rise to Plaintiff's claims occurred in this district. Accordingly, venue in this Court is proper pursuant to 29 U.S.C. §1391.

5.

Defendant Global Hotel Group d/b/a McDonough Hotel Group, LLC may be served by way of its Registered Agent, Joel M. Haber, 2365 Wall Street, Suite 120, Rockdale Co., Conyers, GA 30013.

6.

Defendant Parks Hotels & Resorts, Inc. d/b/a Home2 Suites by Hilton ("Defendant" or "Home2 Suites") is Incorporated and principal place of business in another state. A substantial part of the acts and omissions that give rise to Plaintiff's claims occurred in this district. Accordingly, venue in this Court is proper pursuant to 29 U.S.C. § 1391.

7.

Defendant Parks Hotels & Resorts, Inc. d/b/a Home2 Suites by Hilton may be served by way of its Registered Agent, Corporation Service Company, 40 Technology Parkway, Southsuite 300, Norcross, Ga 30092.

**Parties and Facts**

8.

Plaintiff is a resident of the State of Georgia.

9.

Plaintiff was employed by Defendants (Collectively) with the job title "Housekeeping Manager" from February 29, 2016 to August 22, 2016.

10.

Plaintiff was an "employee" of Defendants, as that term has been by the FLSA.

11.

Throughout Plaintiff's employment with Defendants, Bradley's primary duty was the performance of non-exempt work, specifically the work accomplished between her start date of February 29. 2016 to the opening of the hotel on April 16, 2016, in which Plaintiff was responsible for the physical preparation of the hotel rooms.

12.

On April 16, 2016, the hotel opened for business and Plaintiff's duties included checking the rooms for cleanliness, maintaining inventories and scheduling the Housekeeping Staff of approximately thirteen to fifteen (13-15) staff members.

13.

Plaintiff also was responsible to submit daily reports to Defendants' Management. The reports included: Do Not Disturb, Quality Assurance and Check-Out reports. Plaintiff would conduct physical checks of the rooms before creating the reports.

14.

Plaintiff also carried a walkie-talkie on her hip to receive and send instruction between the staff at the hotel.

15.

The performance of Plaintiff's primary duties did not involve the exercise of discretion and independent judgment on matters of significance.

16.

Defendants are an "employer" as that term has been defined by the FLSA.

17.

Throughout Plaintiff's employment with Defendants, Plaintiff was paid on an hourly basis with overtime compensation for hours she worked in excess of 40 in a workweek.

18.

During Plaintiff's employment with Defendants, Plaintiff regularly worked an amount of time that was more than 40 hours in given workweeks and was not paid the full overtime wage differential for hours she worked over 40.

19.

Defendants are private employers engaged in interstate commerce with gross revenues that exceed $500,000 per year.

20.

Defendants are governed by and subject to the FLSA.

21.

Defendants utilized an electronic time clock (punch in/punch out style) to manage the Plaintiff and the Housekeeping Staff's hours worked per week.

22.

Throughout Plaintiff's employment, Defendants altered the electronic time clock and/or payroll records reducing the number of hours worked by the staff. The reduction in worked hours per pay period, eliminated recorded overtime earned, thus Defendants failed to pay Plaintiff and other staff members the overtime wage differential required by the FLSA, on occasions that Plaintiff and other staff members worked over 40 hours in a workweek.

23.

Plaintiff and her co-workers, including but not limited to Peggy Contreras, Adam (NLN), Evonne (NLN), Paige (NLN), Ms. Francis Battle and Sandra Foster, were automatically deducted for a lunch time, that they would often need to work through in order to complete their assignments.

24.

Plaintiff would often receive complaints from the Housekeeping Staff that they had hours missing and the pay checks were wrong. Plaintiff would report the complaints to her Supervisor, Tamika Gant, who replied that the staff must be missing clock-ins and/or clock outs and that Defendants were not responsible for the staff not clocking in and/or out correctly.

25.

At this same time, in or about June 2016, Plaintiff noticed that her pay checks were not calculating correctly to the number of hours that she was working.

26.

Plaintiff called her Supervisor, Tamika Gant, to report that she too was seeing issues with her own paychecks.

27.

Approximately one week after reporting to Tamika Gant the paycheck issues, Gant called Plaintiff into her office.  During that conversation Plaintiff said to Gant, "Did you speak to anyone about my hours and my money being short?"  Gant again said to Plaintiff, "Are you punching?"  Plaintiff replied, "YES!", "And you know I am here – do my hours look right?  Gant replied, "Brandon [Turner] and I have to discuss putting you on salary."

28.

Approximately one month later, in July 2016, Plaintiff was notified of a deficiency related to a payment made via automatic deduction from her paycheck. Plaintiff reviewed her recent paystubs to compare her hours worked and hours paid and noted the calculations were inaccurate.

29.

The next day, as Plaintiff was punching out for a break, the time clock reflected that she had not yet punched in for the day.  Tamika Gant was standing near Plaintiff, in her office, and they made eye contact.  Plaintiff walked over and

reported to Gant that the time clock indicates she needs to punch in, however she punched in already once that morning.

30.

Once in Tamika Gant's office, Gant asked Plaintiff if she was sure she clocked in that morning, but then stated immediately that she [Gant] can fix that error.

31.

Plaintiff viewed the computer screen on Tamika Gant's desk, which was displaying the payroll screen with Plaintiff's name. Plaintiff said to Gant, "You already got me up, look how God works."

32.

With the payroll screen displayed, Plaintiff asked Tamika Gant to review how many hours she reflects she had worked. Plaintiff immediately saw that the hours worked on the payroll were not matching her actual hours worked.

33.

Plaintiff said to Tamika Gant, "My hours are not right and you know it. I am here everyday sun up and down and on my off days." "We are going to get that clock looked at to see what is wrong."

34.

The next morning, in a morning staff meeting, Plaintiff told everyone to take a photo of their clock in and clock out every day because the clock is missing hours.

Tamika Gant was in the meeting. The staff members agreed they had noticed their hours were not accurately reflected on their pay checks.

35.

Later that day, Tamika Gant approached Plaintiff and asked her why she told the staff about the clock and said, "Now they know we have them working off the clock."

36.

Plaintiff reminded Tamika Gant that Plaintiff submits a daily report to show the date, staff who worked and what duties for that day were performed. Plaintiff said to Gant that she can match the report to the schedule and determine the accuracy of the hours on the payroll.

37.

Approaching the next payroll date of August 19, 2016, Plaintiff discussed with Tamika Gant that the staff had worked overtime hours that pay period. Gant questioned Plaintiff and said, "Why do they have so much overtime, that's no way." Gant continued that Brandon [Regional Manager] was going to hit the ceiling. Plaintiff said to Gant, "Really, they [the staff] have been working the same hours." Plaintiff followed with, "At least we know the clock is working."

38.

Prior to that August 19, 2016 payroll, Tamika Gant was out of the office on an emergency and contacted Plaintiff, while at work, to go into her office and send

her the payroll report by email. Gant gave Plaintiff the code to get into the payroll report to send her.

39.

At that same time, Gant mentioned to Plaintiff that she messed up her time, but she was going to fix it. They agreed that Plaintiff had worked 179 hours but when Plaintiff opened the payroll, it reflected 79 hours worked for the two-week time period.

40.

Plaintiff then reviewed the other staff member's payroll seeing errors in the hours worked throughout the report. Plaintiff said to Gant, "This explains what the staff is saying about missing hours." Gant attempted to explain the errors and Plaintiff commented, "As long as we fix it we are good."

41.

Tamika Gant then asked if Peggy Contreras would accept her overtime pay in cash because Brandon was going to have an issue with payroll.

42.

Plaintiff contacted Peggy Contreras asking if she would accept her overtime payment in cash. Contreras responded to Plaintiff that it did not matter how she was paid, as long as she was paid what hours she worked.

43.

On Friday, August 19, 2016, Tamika Gant met Peggy Contreras and paid her $100.00 cash for the difference owed to her for unpaid overtime hours.

44.

On Friday, August 19, 2016, Tamika Gant told Peggy Contreras the Plaintiff was going to pay Contreras the balance of $100.00 cash owed her for unpaid overtime wages.

45.

On Friday, August 19, 2016, Peggy Contreras called Plaintiff and left a voice message letting Plaintiff know that she had met with Tamika Gant, received the first $100.00 and that Gant had told her that Plaintiff was to pay Contreras the balance of the unpaid overtime wages of $100.00.  Contreras called to "check with that" and "talk to you about some other stuff".

46.

Upon hearing the Friday, August 19, 2016 voice mail from Peggy Contreras, Plaintiff contacted Defendants' Regional Manager, Brandon Turner, to report the problems that were occurring regarding Tamika Gant and the errors in the overtime hours and payment of wages.

47.

On this same date, Friday, August 19, 2016, Plaintiff received her paycheck and reviewed the hours worked. The hours worked reflected 79 hours total for the two-week time period. Gant had not corrected the error they previously discussed.

48.

Plaintiff went directly to Tamika Gant's office. Upon her entry, Gant says to Plaintiff, "You are still going to go half in on Peggy's overtime". Plaintiff was appalled and speechless.

49.

Plaintiff went home and called the Regional Manager, Brandon Turner. Plaintiff told Turner that Tamika Gant had been taking hours from the staff. Turner responded that if she was doing that, it would show red on the payroll. Plaintiff decided to let Turner look into the situation.

50.

Plaintiff called off work on Saturday and on Sunday, August 20 and 21, 2016.

51.

Plaintiff returned the voice mail to Peggy Contreras to let her know that what Tamika Gant had told her about Plaintiff paying the balance of $100.00 of her overtime was not true and that she had never agreed to paying Contreras' overtime wages.

52.

At 5:00 a.m. on Monday, August 22, 2016, Plaintiff arrived to work. Plaintiff went to the Night Auditor, Lyana, at the front desk and handed in a resignation letter and her keys.

53.

Lyana called Tamika Gant and the Sales Director to let them know of Plaintiff's resignation. Lyana was asked by Gant to read the resignation letter over the phone while Plaintiff was standing there. After the letter was read, Gant stated she would be in late.

54.

Plaintiff calculates that during the six (6) months of her employment, she incurred a total of $8,212.50 in lost overtime payments.

## Count I

## Violations of the Overtime Wage Requirement of the Fair Labor Standards Act.

55.

Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if set forth herein.

56.

Defendants have violated the FLSA, 29 U.S.C. §201, by failing to pay overtime wages for time that Plaintiff worked in excess of 40 hours in given workweeks.

57.

Pursuant to the FLSA, 29 U.S.C. §216, Plaintiff brings this lawsuit to recover unpaid overtime wages, liquidated damages in an equal amount, attorneys' fees, and the costs of this litigation.

58.

Defendants' violations of the FLSA were willful and in bad faith.

59.

Defendants knew or showed reckless disregard for the fact its actions, policies, and/or omissions violated the FLSA.

60.

Defendants knew or had reason to know that Plaintiff regularly worked over 40 hours in workweeks without overtime compensation.

61.

By failing to accurately report, record and/or preserve records of hours worked by Plaintiff, Defendants have failed to make, keep and preserve records

with respect to its employees, including Plaintiff sufficient to determine their wages, hours and other conditions and practice of employment, in violation of the FLSA.

### COUNT II VIOLATION OF 29 U.S.C. § 215(A)(3)
### FLSA RETALIATION

62.

Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if set forth herein.

63.

29 U.S.C. § 215(a)(3) makes it unlawful for any person…to discharge or in any other manner discriminates against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or about to testify in any such proceeding, or has served or is about to serve on an industry committee.

64.

The FLSA's definition of the word "person" includes "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."

65.

Defendants are "persons" under the FLSA prohibited from discharging Plaintiff because she engaged in activity protected under the FLSA.

66.

Defendants' actions, policies and/or practices as described above violate the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3).

67.

Defendants knew that its conduct violated the FLSA, and Defendants acted with malice or with reckless indifference to Plaintiff's federally protected rights.

68.

Defendants' violations of the FLSA were willful and in bad faith.

69.

Plaintiff engaged in statutorily protected activity under the FLSA by, inter alia, opposing an employment practice she believed was unlawful under the FLSA.

70.

Plaintiff suffered an adverse employment action as a result of his statutorily protected conduct, to wit: she was constructively discharged by Defendants.

71.

Plaintiff's discharge was not "wholly unrelated" and was, in fact, directly related to her engaging in activity protected under the FLSA.

72.

Plaintiff's statutorily protected activity was a determinative factor in Defendants' decision to discharge her employment.

73.

As a direct and proximate result of the retaliation, Plaintiff has sustained financial losses, including lost wages and benefits, for which she is entitled to recover from Defendants.

74.

As a direct and proximate result of the retaliation, Plaintiff has suffered severe emotional distress, for which she is entitled to recover from Defendants.

75.

Pursuant to the FLSA, 29 U.S.C. § 215(a)(3), Plaintiff is entitled to recover actual and liquidated damages, including lost wages, as well as compensatory damages, attorneys' fees, and the costs of this litigation incurred in connection with these claims.

**Prayer for Relief**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(A)   Grant Plaintiff a trial by jury as to all triable issues of fact;

(B)  Enter judgment awarding Plaintiff unpaid wages pursuant to the FLSA, 29 U.S.C. §207, FLSA § 6, 29 U.S.C. § 206(d), liquidated damages as provided by 29 U.S.C. §216, pre-judgment interest on unpaid wages pursuant to 29 U.S.C. §216, and court costs, expert witness fees, reasonable attorneys' fees as provided by 29 U.S.C. §216, and all other remedies allowed under the FLSA; and,

(C)  Grant declaratory judgment declaring that Plaintiff's rights have been violated from the overtime requirements of the FLSA, and that Defendants' violations of the FLSA were **willful;**

(D)  Grant declaratory judgment declaring that Plaintiff's rights have been violated and that Defendants willfully violated the Equal Pay Act;

(E)  General damages for mental and emotional suffering caused by Defendants' misconduct, along with all economic damages available, including back-pay, and front-pay in lieu of reinstatement;

(F)  Punitive damages based on Defendants' willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts, and as otherwise available under the applicable law;

(G)  Attorneys' fees, costs, and prejudgment interest;

(H)  Permit Plaintiff to amend her Complaint to add additional claims if necessary;

(I)  Award Plaintiff such further and additional relief as may be just and appropriate.

Respectfully submitted this 25th day of July 2017.

**BARRETT & FARAHANY**

s/Adeash "AJ" Lakraj
Adeash "AJ" Lakraj
Georgia Bar No. 444848
*Attorney for Cynthia Bradley*

1100 Peachtree Street
Suite 500
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 facsimile
ajlakraj@justiceatwork.com